IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

CASE NUMBER: 7:20MJ57

The residence of William Preston RAMEY-WOODARD
located at: 3736 Hyde Park Dr., Roanoke, Virginia 24018
in the County of Roanoke.
The residence is described as a two-story home with brick
siding, white trim, and a covered front
porch. To include all outbuildings, vehicles, and the
curtilage surrounding the home.

The residence associated with William Preston RAMEY-WOODARD
Located at: 1605 Stewart Ave., Roanoke, Virginia 24013
In the City of Roanoke.
The residence is described as a two-story home with gray and white siding,
white trim, and a covered front porch. To include all outbuildings, vehicles,
curtilage surrounding the home.

The residence associated with William Preston RAMEY-WOODARD
Located at: 3424 Valley View Ave., Roanoke, Virginia 24012
In the City of Roanoke.
The residence is described as a single-story home with brick siding and
white trim  To include all outbuildings, vehicles,
curtilage surrounding the home.

A 2015, Dodge Challenger gray in color with Virginia
Registration UZL-6295. The Vehicle is registered to
William Preston RAMEY-WOODARD, 3736 Hyde Park Dr.
Roanoke, Virginia.

A 2008. Lexus Sedan black in color with Virginia
Registration UNM-9118. The vehicle is registered to
William Preston RAMEY-WOODARD, 3736 Hyde Park Dr.
Roanoke, Virginia.

A 2008. Mazda SUV blue in color with Virginia
Registration UPG-1533. The vehicle is registered to
Ashley Nicole CALLOWAY, 3736 Hyde Park Dr.
Roanoke, Virginia.

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

**A. Affiant**

I, Todd Farris, depose and say as follows:

1. I am a Task Force Officer with the Drug Enforcement Administration (DEA) and have been so employed since September 2013.  I have received training in the investigation and detection of controlled substance traffickers.  I have personally conducted or assisted in over a hundred investigations into the unlawful possession, possession with the intent to distribute, and distribution of controlled substances, and the associated conspiracies to do so, to wit, violations of Title 21, United States Code Sections 841 (a)(1), and 846.  I have participated in the preparation and execution of numerous arrest and search warrants for criminal offenses involving distribution of controlled substances, and conspiracy to distribute controlled substances.  I am familiar with the methods by which drug traffickers conduct their illegal activities to include their communication methods, methods of asset and contraband management, and the conduct of narcotic transactions.

2. Through my training and experience, I am familiar with the drug culture in and around the Central and Southwest Virginia Area.

3. The information contained within this affidavit is based on my personal experience as well as on information provided to me by other federal agents, local police officers and confidential sources.  Your affiant is aware that narcotic traffickers often keep records in their residences, or in associated "stash houses," or in automobiles associated with their drug trafficking activities, and that these records concern the purchase and sale of controlled substances. Such persons also keep records regarding

home telephone billings, cellular telephone billings, travel (airline, hotel and rental car) receipts, money transfers, and ledgers with pay/owe information, firearms, ammunition, and other documentation that can identify drug customers or sources of supply. All of these items have significant evidentiary value in demonstrating involvement in drug trafficking.

**B. Statement of Probable Cause**

4. Because this affidavit is being submitted for the limited purpose of obtaining a search warrant for the target residences and vehicles, it is not intended to include each and every fact and matter observed by me or known to the government. Therefore, I have set forth only those facts necessary to support probable cause for this application. Law enforcement officers have utilized cooperating sources of information (hereafter referred to as a CS) during this investigation. Regardless of the gender of the CS, he will be referred to in the masculine gender. The cooperating witness in this case has made statements against their own penal interest and has provided law enforcement agents with reliable and credible information which has been corroborated.

All of the below events conducted by law enforcement occurred in and around the City and County of Roanoke, Virginia, all within the Western District of Virginia.

5. This affidavit is made in support of a SEARCH WARRANT to search the following residences. 1) 3736 Hyde Park Dr. Roanoke, Virginia. This residence has been used by William Preston RAMEY-WOODARD in furtherance of drug trafficking crimes. Further, based on training and experience, your affiant believes that RAMEY-WOODARD utilizes the residence at 3736 Hyde Park Dr., VIRGINIA to store and/or secure drugs, firearms, and documentation related to drug trafficking activities. Said

documentation would include hard copy documentation, as well as digitally stored information. 2) 1605 Stewart Ave. SE, Roanoke, Virginia.

This residence has been used by William Preston RAMEY-WOODARD in furtherance of drug trafficking crimes. Further, based on training and experience, your affiant believes that RAMEY-WOODARD utilizes the residence at 1605 Stewart Ave. SE. Roanoke, VIRGINIA to store and/or secure drugs, firearms, and documentation related to drug trafficking activities. Said documentation would include hard copy documentation, as well as digitally stored information. 3) 3424 Valley View Ave. Roanoke, Virginia. This residence has been used by William Preston RAMEY-WOODARD in furtherance of drug trafficking crimes. Further, based on training and experience, your affiant believes that RAMEY-WOODARD utilizes the residence at 3424 Valley View Ave. Roanoke, VIRGINIA to store and/or secure drugs, firearms, and documentation related to drug trafficking activities. Said documentation would include hard copy documentation, as well as digitally stored information

This affidavit is also made in support of a SEARCH WARRANT to search the following vehicles: 1) A 2015, Dodge Challenger, gray in color with Virginia registration UZL-6295. The Vehicle is registered to William Preston RAMEY-WOODARD, 3736 Hyde Park Dr., Roanoke, Virginia. 2) A 2008, Lexus Sedan, black in color with Virginia registration UNM-9118. The Vehicle is registered to William Preston RAMEY-WOODARD, 3736 Hyde Park Dr., Roanoke, Virginia. 3) A 2008, Mazda SUV, blue in color with Virginia registration UPG-1533. The Vehicle is registered to Ashley Nicole CALLOWAY, 3736 Hyde Park Dr., Roanoke, Virginia.

6. In March 2020, the Roanoke Valley Regional Drug Unit identified RAMEY-

WOODARD as a heroin/fentanyl trafficker operating in the Roanoke, Virginia area.  This information was gained through an interview conducted with a CS who made statements against their penal interest regarding multiple past transactions that they personally conducted, where they were supplied with large quantities of illegal narcotics, to include heroin, by RAMEY-WOODARD. The CS also provided information about observing RAMEY-WOODARD with firearms during previous drug transactions.  The CS positively identified RAMEY-WOODARD from a photograph.  Law enforcement has confirmed through databases that 3736 Hyde Park Dr., Roanoke, VIRGINIA in Roanoke County is the residence of William Preston RAMEY-WOODARD.

      7. In March 2020, the Roanoke Valley Regional Drug Unit utilized the CS to make a controlled purchase of heroin from RAMEY-WOODARD. This was the first controlled purchase from RAMEY-WOODARD.  The controlled purchase was directly monitored by the controlling law enforcement officers with controls in place to ensure that any transaction conducted would produce admissible evidence.   The CS and their premises, where the transaction was to occur, were searched prior to the transaction, and no contraband or illegal items were located. The CS was issued government funds to make this purchase.  The CS made contact with RAMEY-WOODARD by placing a recorded call to cellular phone number 540-892-0690. During this conversation, RAMEY-WOODARD agreed to deliver a quantity of heroin to the CS. Prior to making this recorded phone call, your affiant along with other law enforcement officers established surveillance at RAMEY-WOODARD's residence located at 3736 Hyde Park Dr. Roanoke, Virginia. Approximately 35 minutes after the call was made, your affiant observed RAMEY-WOODARD arrive in front of 3736 Hyde Park Dr. Roanoke, Virginia

in a blue 2008 Mazda Sports Utility Vehicle bearing Virginia license plate number UPG-1533. At that time, your affiant observed RAMEY-WOODARD exit the vehicle from the driver's side and accompany a female along with two children, into the residence. Approximately six minutes later, your affiant observed RAMEY-WOODARD exit the residence and return to the Mazda and drive away. Due to RAMEY-WOODARD's erratic driving behavior, surveillance was lost almost immediately. Approximately 31 minutes later, RAMEY-WOODARD was observed arriving at the agreed upon meet location in the Mazda, where he made contact with the CS. Law enforcement utilized covert audio and video equipment to monitor and record the transaction. RAMEY-WOODARD was observed pulling narcotics out of his pockets and giving it to the CS. Additionally, a firearm was observed in RAMEY-WOODARD's right front pocket. The CS was met after the transaction by the controlling law enforcement officers and the purchased evidence was collected. The CS and the premises were also searched again, which resulted in no contraband or illegal items being located. A debriefing was conducted with the CS, who detailed the drug transaction and confirmed that RAMEY-WOODARD was in possession of a firearm during the transaction. The drug evidence was counted, and totaled 500 bags (dosage units) of purported heroin. A "TruNarc" field test was conducted and yielded positive results for the presence of a fentanyl compound.

After the transaction, law enforcement officers continued to follow and maintain surveillance on RAMEY-WOODARD. Immediately after the controlled purchase, RAMEY-WOODARD was followed directly to 1605 Stewart Ave. SE, Roanoke, Virginia and was observed entering that residence via the front door. RAMEY-

WOODARD did not make any stops or meet anyone prior to arriving at the address on Stewart Ave. At that time, surveillance on RAMEY-WOODARD was discontinued.

8.  In April 2020, the Roanoke Valley Regional Drug Unit utilized the CS to make another controlled purchase of heroin from RAMEY-WOODARD. This was the second controlled purchase from RAMEY-WOODARD.  Prior to meeting the CS, law enforcement personnel established surveillance at the residence of RAMEY-WOODARD located at 3736 Hyde Park Dr. Roanoke, Virginia. During this time, RAMEY-WOODARD was observed leaving the residence in a black 2008 Lexus sedan, bearing Virginia license plate number UNM-9118. Again, due to RAMEY-WOODARD's erratic driving behavior, surveillance was lost immediately. Approximately 20 minutes later, RAMEY-WOODARD was observed arriving at 1605 Stewart Ave SE, Roanoke, Virginia.  RAMEY-WOODARD was observed by law enforcement knocking on the front window of the residence, at which time the front door opened and RAMEY-WOODARD entered the residence.

The controlled purchase was directly monitored by the controlling law enforcement officers with all normal controls in place.  The CS and their premises were searched prior to the transaction, and no contraband or illegal items were located.  The CS was issued government funds to make this purchase The CS attempted to make contact with RAMEY-WOODARD through a text message to cellular phone number 540-892-0690 with no immediate response from RAMEY-WOODARD. Shortly after the text message was sent, RAMEY-WOODARD was observed exiting the residence at 1605 Stewart Ave. SE, Roanoke, Virginia.  Surveillance was unable to be maintained due to RAMEY-WOODARD's driving behavior. Controlling law enforcement officers issued

the CS government funds to make the purchase and deployed covert audio and video equipment to monitor and record the transaction.

Due to the fact that surveillance on RAMEY-WOODARD was extremely difficult to maintain, law enforcement officers continued to check known locations for RAMEY-WOODARD. During this time, RAMEY-WOODARD was observed coming and going from 1605 Stewart Ave. SE Roanoke, Virginia on several occasions while in contact with the CS through text messages indicating that he was on his way. During one of these occasions, RAMEY-WOODARD was observed leaving 1605 Stewart Ave. SE, Roanoke, Virginia with a pistol in his waistband.  RAMEY-WOODARD was followed to a convenience store located on 8th St. NW Roanoke, Virginia. RAMEY-WOODARD was observed walking into the store and a short time later observed walking back out to his vehicle with a duffle bag. RAMEY-WOODARD then returned back to 1605 Stewart Ave. SE, Roanoke, Virginia. RAMEY-WOODARD then left the residence and was followed until surveillance was lost again.

Approximately an hour later, RAMEY-WOODARD arrived at the CS location. This meeting was observed and monitored through the recording device. RAMEY-WOODARD was observed reaching into his pocket and handing the narcotics to the CS. The transaction only lasted a few minutes and RAMEY-WOODARD departed the area by unknown means. Law enforcement officers thereafter attempted to locate RAMEY-WOODARD, but were unsuccessful. The CS was met after the transaction by the controlling law enforcement officers and the purchased evidence was collected.  The CS and the premises were also searched again, and no contraband or illegal items were located. A debriefing was conducted with the CS, who detailed the drug transaction. The

drug evidence was later counted totaling 651 bags (dosage units) of what was claimed to be heroin. A field test was also conducted, which yielded positive results for fentanyl.

      9. In May 2020, DEA Roanoke and the Roanoke Valley Regional Drug Unit utilized the CS to make a third controlled purchase of heroin from RAMEY-WOODARD. Prior to meeting the CS, law enforcement officers located RAMEY-WOODARD at his residence located at 3736 Hyde Park Dr. Roanoke, Virginia. Once this was established, controlling law enforcement officers met with the CS at which time the CS and premises were searched, and no contraband or illegal items were located. The CS was provided a new cellular phone number by RAMEY-WOODARD, who instructed the CS to contact him once he was ready to make the transaction. The CS sent RAMEY-WOODARD a text message to cellular phone number 434-439-8537. Shortly after the text was sent, RAMEY-WOODARD acknowledged it, and within minutes of him answering the text message, RAMEY-WOODARD was observed leaving his residence in his gray 2015 Dodge Challenger bearing Virginia license plate number UZL-6295. RAMEY-WOODARD was followed to 3424 Valley View Ave. NW, Roanoke, Virginia where he was observed entering the front door with a key. A few minutes later, RAMEY-WOODARD was observed exiting the residence and returning to his vehicle. RAMEY-WOODARD was then followed to the CS meet location. During this time, RAMEY-WOODARD and the CS conducted the drug transaction over the course of a lengthy conversation. The CS was met after the transaction by the controlling law enforcement officers and the purchased evidence was collected. The CS and the premises was also searched again, and no contraband or illegal items were located. A debriefing was conducted with the CS, who detailed the drug transaction.

Once the transaction was concluded, RAMEY-WOODARD returned to his vehicle and surveillance was maintained on him. Law enforcement followed RAMEY-WOODARD, who stopped at a fast food restaurant drive through before going to the residence located at 1605 Stewart Ave. SE, Roanoke, Virginia. At that location, RAMEY-WOODARD was observed going inside the residence, at which time, surveillance was discontinued on RAMEY-WOODARD. Although there was not an official count made of the number of bags making up the purchased evidence, the total was approximately 450 bags (dosage units). A TruNarc test was conducted in the field that yielded an "inconclusive" result, however, a field test was conducted at DEA Roanoke, which yielded a positive result for heroin.

10. Based upon your affiant's training, expertise, and experience, your Affiant knows that:

a. Distributors of controlled substances often maintain premises separate and apart from their home residence for use as "stash houses" and use those premises to further their drug trafficking activities for purposes including the storage of bulk illegal narcotics, cash or firearms. Traffickers routinely keep at their residence or at these stash houses certain ledger books, telephone books, receipts, drug customer lists, photographs and other papers that identify co-conspirators and their locations or residences, and that relate to the importation, transportation, purchasing and distribution of controlled substances and proceeds derived from said sales;

b. Drug traffickers generate substantial profits as a result of drug dealing which the courts have recognized as probative evidence of crimes motivated by greed, in particular, trafficking controlled substances. Drug traffickers often place assets in corporate entities

in order to avoid detection of those assets by law enforcement agencies. These assets often are placed in other person's names, even though the drug dealers continue to use these assets and exercise dominion and control over them. They also often maintain on hand large amounts of United States currency in order to operate and finance their ongoing drug business;

   c. Drug traffickers commonly "front" (i.e. provide on consignment) controlled substances to their clients and the aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them. It is common practice for large scale drug dealers to secrete contraband, proceeds and drug sales and records of drug transactions in secure locations within their residences, stash houses, and/or places of business for ready access and to conceal such items from law enforcement authorities. Persons involved in large scale drug trafficking often conceal in their residences, stash houses, and/or places of business, caches of drugs, large amounts of currency, financial instruments, precious metals, jewelry, automobile titles and other items of value which are proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting or spending large sums of money acquired from engaging in narcotics trafficking activities;

   d. When drug traffickers amass large proceeds from the sale of drugs, they often attempt to legitimize or "launder" these profits. To accomplish this, drug traffickers may utilize, but are not limited to, domestic and foreign banks and/or financial institutions and their attendant services, such as securities, cashier's checks and money drafts, and documents reflecting these money laundering schemes can often be found at residences or stash locations;

e. Drug traffickers commonly cause to be taken photographs of themselves, their associates, their property and items used in the distribution of controlled substances, and these photograph are often of evidentiary value. Drug traffickers usually maintain these photographs at their residences or places of business;

f. Drug traffickers commonly have in their possession, on their person and/or at their residences, stash houses, and places of business, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons and ammunition. Such firearms are used to protect and secure a drug trafficker's property and currency;

g. It is common for narcotics traffickers to possess and hide paraphernalia used to cut, weigh and package narcotics, including cutting materials, scales, and plastic baggies; other contraband including firearms; proceeds of narcotics transactions and records of narcotics sales in secure locations within their residence, their businesses, the residences of relatives and associates, or other locations, such as stash houses, over which they maintain dominion and control, so as to have ready access to and to conceal these items from law enforcement authorities;

h. Narcotics traffickers use motor vehicles to transport and/or store illegal narcotics, currency, and firearms. This may include the use of surreptitious compartments within these vehicles to store contraband and/or proceeds.

i. Drug traffickers commonly use electronic devices, including, but not limited to; cellular telephones, computers, facsimile machines, currency counting machines, telephone answering machines, computer software, portable hard disk drives, flash or USB drives, tapes, discs, CD, DVDs, and audio tapes to store records of drug sales,

ledgers, supplier's/customer's contact information, financial records, images, audio/video recordings and other related documents related to the trafficking and sale of narcotics.

13. Based on the aforementioned, your affiant respectfully submits that there is probable cause to believe that William Preston RAMEY-WOODARD has violated Title 21, United States Code, Section 841, to wit: distribution of heroin and fentanyl, which are controlled substances, and that drugs, documentation, and other items related to the illegal distribution of heroin will be located in the residences at 3736 Hyde Park Dr., Roanoke, Virginia, 1605 Stewart Ave. SE, Roanoke, Virginia, and 3424 Valley View Ave. Roanoke, Virginia and in the vehicles that he used to conduct the previously described controlled narcotics transactions, specifically the 2015 Dodge Challenger with Virginia registration UZL-6295, the 2008 Lexus Sedan with Virginia registration UNM-9118, and the 2008 Mazda SUV with Virginia registration UPG-1533.

Todd Farris
Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me this __19__ th day of May 2020
Sworn and attested to telephonically.

Honorable Robert Ballou
United States Magistrate Judge